

**FILED**

**FEBRUARY 12, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GSI Technologies, LLC, formerly Graphic Solutions International, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. |
| Tyco Electronics Corporation, | ) ) ) | |
| Defendant. | ) | |

**08 C 901**

**JUDGE COAR**
**MAGISTRATE JUDGE COX**

## COMPLAINT

Plaintiff, GSI Technologies, LLC, formerly Graphic Solutions International, LLC

("GSI"), by its attorneys, GoodSmith Gregg & Unruh LLP, and for its complaint against

Defendant, Tyco Electronics Corporation ("Tyco"), states as follows:

I.

## The Parties

1.    GSI is a corporation organized under the laws of the State of Illinois, with its

principal place of business in Burr Ridge, DuPage County, Illinois.  GSI is in business of

functional printing and industrial graphics products.

2.    Upon information and belief, at all times mentioned herein, Tyco is a corporation

organized under the laws of Pennsylvania.  Tyco's principal place of business is maintained in

Berwyn, Pennsylvania.  Tyco regularly conducts business within the State of Illinois and

maintains a sales office in Naperville, Illinois.  Tyco is in the business of designing,

manufacturing and marketing engineered electronic components for consumer and industrial production.

II.

## Jurisdiction and Venue

3.      This court has subject matter jurisdiction over this action arising under 28 U.S.C. § 1332 (a), as it is between citizens of different states, and the amount in controversy, exclusive of interest or costs, exceeds the sum or value of seventy-five thousand dollars ($75,000).

4.      Venue is proper in this Court because, pursuant to 28 U.S.C. § 1391, a substantial part of the events or omissions giving rise the subject claim occurred in this judicial district.

III.

## General Allegations to All Counts

5.      In the summer of 2004, GSI and Tyco engaged in discussions for Tyco to design and fabricate a Surface Mount Technology ("SMT") machine, specifically, a Surface Mount Assembly Line, known as the Reel to Reel RFID Assembly Line, for use by GSI in the assembly and application of radio-frequency identification products ("RFID"), also known as smart labels, sold by GSI (the "SMT Machine").

6.      Following those discussions, on or about August 17, 2004, Tyco submitted to GSI a general quotation for the SMT Machine pursuant to GSI's specifications (Tyco's "Quote"). A true and accurate copy of Tyco's Quote is attached hereto and incorporated herein by reference as Exhibit A.

7.      Subsequently, GSI forwarded to Tyco a specification for the SMT Machine which set forth the capabilities that GSI required from the SMT Machine, identified performance specifications, required that Tyco provide a warranty guaranteeing compliance with all

parameters set forth in the specification and required that acceptance tests be run at GSI's location and that acceptance was to be in writing after the conclusion of the acceptance tests (the "Specification"). A true and accurate copy of the Specification is attached hereto and incorporated herein by reference as Exhibit B.

8.     On or about December 6, 2004 GSI accepted Tyco's Quote by issuing a purchase order and noting on the order that it was subject to the Specification (the "Purchase Order"). A true and accurate copy of Purchase Order is attached hereto and incorporated herein by reference as Exhibit C.

9.     On December 7, 2004 Tyco issued a response to the Purchase Order which generally "accepted" the specific items in the Specification, sought certain "clarifications" and stated certain limited "exceptions" ("Tyco's Purchase Order Response"). Tyco specifically accepted the obligation to guarantee performance of the SMT Machine in accordance with the Specification and agreed that an acceptance test would be performed at GSI and signed off on in writing. A true and accurate copy of Tyco's Purchase Order Response is attached hereto and incorporated herein by reference as Exhibit D.

10.     Tyco then began to design and fabricate the SMT Machine. In December 2005, representatives of GSI traveled to Tyco's facility at Willow Grove, Pennsylvania where trial runs of the SMT Machine were conducted using "dummy" chips and batteries. While the SMT Machine was unable to operate for an extended period of time, it was shipped to GSI on December 22, 2005 for installation and testing on GSI's premises.

11.     In January 2006, the SMT Machine was installed at GSI's facility but was unable to operate for a sufficient period of time (using dummy batteries and chips) to ensure that it was capable of meeting the rate and yield requirements set forth in the Specification.

12.    GSI was not able to confirm the SMT Machine's ability to meet rate and yield requirements and thus has never issued a signed agreement concluding acceptance tests as provided by the Specification.

13.    On March 15, 2006 in good faith reliance on Tyco's promises to meet the Specification requirements, GSI made the final payment of $371,117.44 (GSI had made previous payments totaling $808,972.32), resulting in a total paid price of $1,180,089.76.

14.    In September 2006, GSI began to attempt to use the SMT Machine to produce products that fit within the production and material requirements set forth in the Specification

15.    When GSI began this attempted production, however, GSI determined that the SMT Machine was defective in that it could not operate in a manner that met the rate and yield requirements of the Specification, specifically, the SMT Machine operated at a low component placement speed and had thermode sticking problems.

16.    In October and November of 2006, GSI informed Tyco of the yield and rate problems with the SMT Machine. Subsequently, GSI informed Tyco of a host of problems with the SMT Machine that resulted in GSI submitting a warranty claim on or about January 27, 2007 ("GSI's Warranty Claim"). A true and accurate copy of GSI's Warranty Claim with Tyco's response is attached hereto and incorporated herein by reference as Exhibit E.

17.    Since that time, Tyco personnel have made ten trips to GSI in an attempt to cause the SMT Machine to meet the rate and yield requirements of the Specification. Tyco has not, however, met its obligations under the Specification. As a result, GSI has been unable to accept or process orders for powered smart labels, while it has employed two full time operators dedicated to the SMT Machine along with GSI engineers and an outside specialized SMT consultant.

4

18.    In a final attempt to meet the rate and yield requirements of the Specification, Tyco representatives recently visited GSI to conduct a validation run on the SMT Machine to determine if it could run according to the requirements of the Specification. The SMT Machine failed to perform per the rate and yield requirements of the Specification.

19.    On November 9, 2007, GSI summarized the results in a validation run summary ("GSI's Validation Run Summary"). A true and accurate copy of the Validation Run Summary is attached hereto and incorporated herein by reference as Exhibit F.

20.    On November 24, 2007, Tyco responded to the GSI's Validation Run Summary by erroneously stating that each and every problem noted is "process and material related" and "a non-warranty issue" ("Tyco's Response to GSI's Validation Run Summary"). A true and correct copy of the Tyco's Response to GSI's Validation Run Summary is attached hereto and incorporated herein by reference as Exhibit G.

21.    GSI has suffered substantiated damage as a result of Tyco's breach of its obligations. GSI paid $1,180,089.76 to purchase the unusable SMT Machine, hired two operators for two years at a cost of approximately $228,000, paid $168,000 for engineering and consultant support, paid $314,000 in wasted leasehold improvements in connection with the unusable SMT Machine and even paid for Tyco employee travel costs when visiting the GSI plant. In addition, GSI has forgone business that it believes would have yielded in the range of $200,000 in profits to date. On top of all that, GSI has suffered the damage to its reputation resulting from the inability to meet customer demands caused by the SMT Machine's failure to meet the requirements of the Specification.

22.     GSI has requested that Tyco accept return of the SMT Machine and provide GSI with reimbursement for the purchase price of the SMT Machine and damages from Tyco's breach of its obligations.  Tyco has refused to provide such reimbursement.

## Count I - Breach of Contract

23.     GSI repeats and realleges the allegations in paragraphs 1 through 22, as though fully set forth herein.

24.     Under the terms of the Quote, Specification, Purchase Order and Tyco's Purchase Order Response (collectively, the "Written Contract"), Tyco agreed to design and fabricate a SMT Machine meeting the requirements set forth in the Specification for use by GSI in performing the assembly and application of RFID products sold by GSI.

25.     GSI has performed all the conditions on its part under the terms of the Written Contract.

26.     Tyco breached its obligations under the Written Contract, in that it failed to design and/or fabricate the SMT Machine pursuant to the Specification and thus, the SMT Machine does not perform the necessary function of assembly and application of RFID products.

27.     GSI provided Tyco with timely notice of the breach of contract alleged herein.

28.     Despite numerous attempts, Tyco has been unable or refuses to bring the SMT Machine into compliance per the Specification, further constituting a breach of Tyco's obligations under the Written Contract.

29.     As a direct and proximate result of Tyco's breach, GSI has been unable to use the SMT Machine for its intended purpose and has been damaged in excess of $ 2,090,089.76, as delineated above.

## Count II - Breach of Express Warranty

30.    GSI repeats and realleges the allegations stated in paragraphs 1 through 22, as though fully set forth herein.

31.    At all relevant time, there was in full force and effect the Illinois Commercial Code, § 810 ILCS 5/1-101 *et seq.* (the "Code").

32.    Section 2-313 of the Code provides in relevant part:

(1)    Express warranties by the seller are created as follows:

      (a)    Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

      (b)    Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

33.    As part of the consideration for the purchase of the SMT Machine by the terms of the Written Contract, Tyco expressly agreed to guarantee performance of the SMT Machine within the Specification, specifically that Tyco would "guarantee compliance with all of the parameters specified [in the Specification]" (the "Written Warranty"). See Exhibit B at pp. 9-10 and Exhibit D at section 4.0.

34.    Furthermore, as part of the consideration for the purchase of the SMT Machine by the terms of the Written Contract, Tyco's described the "performance" of the SMT Machine. *See* Exhibit B at pp. 6-9 and Exhibit D at section 3.0. This warranty by description along with the Written Warranty is hereafter referred to as the "Express Warranties".

35.     Per the Written Contract, the warranty term was to begin after the SMT Machine was installed at GSI's facility and functional tests were conducted and the SMT Machine passed acceptance tests.

36.     Notwithstanding that the SMT Machine never passed acceptance tests, Tyco began performing under the Express Warranties on or about October 2006.

37.     GSI gave notice of its claims under the Express Warranties by submitting GSI's Warranty Claim to Tyco on or about January 27, 2007.

38.     GSI has performed all of its obligations pursuant to the terms of the Express Warranties.

39.     Tyco breached the Express Warranties by designing and/or fabricating the SMT Machine in a condition such that it does not perform the necessary function of assembly and application of RFID products at the yield or rate required by the Specification.

40.     GSI provided to Tyco timely notice of the breach of the Express Warranties.

41.     Tyco has further breached the Express Warranties by not bringing the SMT Machine into compliance with the Specification.

42.     GSI has been damaged by Tyco's breach of the Express Warranties and therefore is entitled to incidental and consequential damages under section 2-715 of the Code, totaling in excess of $2,090,089.76, as delineated above.

### Count III – Breach of Implied Warranty

43.     GSI repeats and realleges the allegations in paragraphs 1 through 22, as though fully set forth herein.

44.     At all relevant time, there was in full force and effect the Illinois Commercial

Code, § 810 ILCS 5/1-101 *et seq*. (the "Code").

45.     Section 2-314 of the Code provides, in relevant part:

(1)     Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to the goods of that kind.

(2)     For goods to be merchantable, they must, at a minimum:

   (a)     pass without objection in the trade under the contract description; and

   (d)     run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved.

46.     By failing to properly perform the assembly application of RFID products, the

SMT Machine would not pass without objection in the trade under the contract description and

does not run within the variations permitted by the Written Agreement.

47.     Tyco breached the implied warranty of merchantability in that the SMT Machine

was not in a merchantable condition when sold or at any time thereafter and was not fit for the

ordinary purpose for which the SMT Machine is used as it does not properly perform the

assembly application of RFID products as warranted and failed to function appropriately.

48.     GSI has been damaged by Tyco's breach of its implied warranties and therefore is

entitled to incidental and consequential damages under section 2-715 of the Code, totaling in

excess of $2,090,089.76, as delineated above.


## **PRAYER FOR RELIEF**


WHEREFORE, Plaintiff GSI requests that this Court enter judgment in favor of GSI and

against Defendant Tyco as follows:

A.     For damages in excess of Two Million Ninety Thousand Eighty Nine and 76/100 dollars ($ 2,090,089.76), and such further and other relief as this Court may deem just and proper;

B.     For statutory damages set forth above; and

C.     For any and all other relief which this Court shall deem proper.

## JURY TRIAL DEMAND

Plaintiff specifically requests and demands a trial by jury on all issues as triable as a matter of right.

Dated:  February 12, 2008

Respectfully submitted,

s/ Kenneth S. GoodSmith
Kenneth S. GoodSmith (ARDC # 6180874)
D. R. Edwards, Of Counsel (ARDC # 6190079)
Stephanie J. Synol (ARDC # 6279898)
GoodSmith Gregg & Unruh LLP
150 S. Wacker Drive, Suite 3150
Chicago, IL 60606
Tel:  (312) 322-1981
Fax:  (312) 322-0056