JWB/MPS/jmk         7918-08001         #1803679-v3

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GSI Technologies, LLC, formerly Graphic Solutions International, LLC, <br>     Plaintiff, <br> vs. <br><br> Tyco Electronics Corporation <br>     Defendant. | Case No.: 08 C 901 <br><br> Judge David Coar <br><br> Magistrate Susan Cox |

## ANSWER TO PLAINTIFF'S COMPLAINT

Defendant Tyco Electronics Corporation (hereinafter "Tyco Electronics"), by and through its attorneys, and for its Answer to Plaintiff, GSI Technologies, LLC, formerly Graphic Solutions International, LLC (hereinafter "GSI") Complaint, states as follows:

### I.

### The Parties

1. GSI is a corporation organized under the laws of the State of Illinois, with its principal place of business in Burr Ridge, DuPage County, Illinois. GSI is in business of functional printing and industrial graphics products.

**Answer:** Tyco Electronics admits the allegations in Paragraph 1 that GSI's principal place of business is in Burr Ridge, Illinois. Tyco Electronics is without knowledge as to whether GSI is a corporation organized under the laws of the State of Illinois and the nature and extent of GSI's business, and therefore denies the allegations.

2. Upon information and belief, at all times mentioned herein, Tyco is a corporation organized under the laws of Pennsylvania. Tyco's principal place of business is maintained in Berwyn, Pennsylvania. Tyco regularly conducts business within the State of Illinois and maintains a sales office in Naperville, Illinois. Tyco is in the business of designing,

1803679-V3

1

manufacturing and marketing engineered electronic components for consumer and industrial production.

**Answer:** Tyco Electronics admits the allegations in Paragraph 2.

II.

**Jurisdiction and Venue**

3. This court has subject matter jurisdiction over this action arising under 28 U.S.C. §1332(a), as it is between citizens of different states, and the amount in controversy, exclusive of interest or costs, exceeds the sum or value of seventy-five thousand dollars ($75,000).

**Answer** Tyco Electronics admits the allegations in Paragraph 3.

4. Venue is proper in this Court because, pursuant to 28 U.S.C. § 1391, a substantial part of the events or omissions giving rise [to] the subject claim occurred in this judicial district.

**Answer** Tyco Electronics admits that venue lies in this court. Tyco denies the remaining allegations in Paragraph 4 that any events or omissions give rise to a claim against Tyco Electronics.

III.

**General Allegations to All Counts**

5. In the summer of 2004, GSI and Tyco engaged in discussions for Tyco to design and fabricate a Surface Mount Technology ("SMT") machine, specifically, a Surface Mount Assembly Line, known as the Reel to Reel RFID Assembly Line, for use by GSI in the assembly and application of radio-frequency identification products ("RFID"), also known as smart labels, sold by GSI (the "SMT Machine").

**Answer:** Tyco Electronics admits the allegations in Paragraph 5, but states that GSI hired Tyco Electronics to design, engineer and fabricate the Power ID product pursuant to GSI's Specification: Power ID Assembly Line v.8.1.

6. Following those discussions, on or about August 17, 2004, Tyco submitted to GSI a general quotation for the SMT Machine pursuant to GSI's specifications (Tyco's "Quote"). A true and accurate copy of Tyco's Quote is attached hereto and incorporated herein by reference as Exhibit A.

**Answer:** Tyco Electronics admits the allegations in Paragraph 6 that it issued the quotation for the design and fabrication of a Reel to Reel RFID assembly line (hereinafter "RFID Line") per GSI Chip Mounter Spec. Tyco v8.1 Specification: Power ID Assembly Line, identified as Exhibit A.

7. Subsequently, GSI forwarded to Tyco a specification for the SMT Machine which set forth the capabilities that GSI required from the SMT Machine, identified performance specifications, required that Tyco provide a warranty guaranteeing compliance with all parameters set forth in the specification and required that acceptance tests be run at GSI's location and that acceptance was to be in writing after the conclusion of the acceptance tests (the "Specification"). A true and accurate copy of the Specification is attached hereto and incorporated herein by reference as Exhibit B.

**Answer:** Tyco Electronics admits the allegations that GSI forwarded a specification entitled Chip Mounter Spec. Tyco v8.1 Specification: Power ID Assembly Line for the RFID Line, identified as Exhibit B, requesting Tyco Electronics to provide a warranty and requiring functional tests to be run at GSI pertaining to the Power ID product. Tyco Electronics denies the remaining allegations in Paragraph 7.

1803679-V3

8. On or about December 6, 2004 GSI accepted Tyco's quote by issuing a purchase order and noting on the order that it was subject to the Specification (the "Purchase Order"). A true and accurate copy of Purchase Order is attached hereto and incorporated herein by reference as Exhibit C.

**Answer:** Tyco Electronics admits the allegations that GSI issued a purchase order dated December 6, 2004 to Tyco Electronics identified as Exhibit C. Tyco Electronics denies the remaining allegations in Paragraph 8. Tyco Electronics incorporates its answer in Paragraph 9 of this Answer as its further answers to the allegations in Paragraph 8.

9. On December 7, 2004 Tyco issued a response to the Purchase Order which generally "accepted" the specific items in the Specification, sought certain "clarifications" and stated certain limited "exceptions" ("Tyco's Purchase Order Response"). Tyco specifically accepted the obligation to guarantee performance of the SMT Machine in accordance with the Specification and agreed that an acceptance test would be performed at GSI and signed off on in writing. A true and accurate copy of Tyco's Purchase Order Response is attached hereto and incorporated herein by reference as Exhibit D.

**Answer:** Tyco Electronics admits the allegations that on December 7, 2004, Tyco Electronics issued its Purchase Order Response to GSI identified as Exhibit D. Answering further, Tyco Electronics states that its Purchase Order Response states certain "clarifications" and "exceptions" to the provisions of GSI's purchase order. Answering further, Tyco Electronics admits that its Purchase Order Response accepted Par 4.1 Warranty and Par 4.2 Acceptance Test at GSI as it relates to the Power ID Assembly Line Specification revision 5.0. Tyco Electronics denies the remaining allegations in Paragraph 9.

10. Tyco then began to design and fabricate the SMT Machine. In December 2005, representatives of GSI traveled to Tyco's facility at Willow Grove, Pennsylvania where trial runs of the SMT Machine were conducted using "dummy" chips and batteries. While the SMT Machine was unable to operate for an extended period of time, it was shipped to GSI on December 22, 2005 for installation and testing on GSI's premises.

**Answer:** Tyco Electronics admits the allegations in Paragraph 10, but denies the allegation that the RFID Line was unable to operate for an extended period of time. Answering further, GSI reviewed and approved the SMT Machine for shipment to GSI's facility in Burr Ridge, Illinois in early January 2006.

11. In January 2006, the SMT Machine was installed at GSI's facility but was unable to operate for a sufficient period of time (using dummy batteries and chips) to ensure that it was capable of meeting the rate and yield requirements set forth in the Specification.

**Answer:** Tyco Electronics admits the allegation in Paragraph 11 that the RFID Line was installed at GSI's Burr Ridge, Illinois facility in January 2006, but denies the remaining allegations that the RFID Line was unable to operate for a sufficient period of time and that it was not capable of meeting the Specification v.8.1 rate and yield requirements. Answering further, GSI approved and accepted the RFID Line at the time of the installation of the RFID Line in GSI's facility in January 2006. GSI made the final payment for the purchase of the RFID Line in March 2006.

12. GSI was not able to confirm the SMT Machine's ability to meet rate and yield requirements and thus has never issued a signed agreement concluding acceptance tests as provided by the Specification.

**Answer:** Tyco Electronics denies the allegations in Paragraph 12. Answering further, Plaintiff GSI waived any provision in the Specification v8.1 that an acceptance test be signed off in writing regarding the performance of the RFID Line to meet the rate and yield requirements when GSI instructed Tyco Electronics to ship the RFID Line to GSI's facility in Burr Ridge, Illinois in January 2006 and by its approval and issuance of the final payment of the purchase price in the amount of $371,117.44 to Tyco Electronics in March 2006.

13. On March 15, 2006, in good faith reliance on Tyco's promises to meet the Specification requirements, GSI made the final payment of $371,117.44 (GSI had made previous payments totaling $808,972.32), resulting in total paid price of $1,180,089.76.

**Answer:** Tyco Electronics admits the allegations that GSI made the final payment of $371,117.44, as well as previous payments totaling $808,972, for a total paid price of $1,180,089.76. Tyco denies the remaining allegations in Paragraph 13.

14. In September 2006, GSI began to attempt to use the SMT Machine to produce products that fit within the production and material requirements set forth in the Specification.

**Answer:** Tyco Electronics is without specific knowledge of the allegations and therefore denies the allegations in Paragraph 14.

15. When GSI began this attempted production, however, GSI determined that the SMT Machine was defective in that it could not operate in a manner that met the rate and yield requirements of the Specification, specifically, the SMT Machine operated at a low component placement speed and had thermode sticking problems.

**Answer:** Tyco Electronics denies the allegations in Paragraph 15.

1803679-V3

16. In October and November of 2006, GSI informed Tyco of the yield and rate problems with the SMT Machine. Subsequently, GSI informed Tyco of a host of problems with the SMT Machine that resulted in GSI submitting a warranty claim on or about January 27, 2007 ("GSI's Warranty Claim"). A true and accurate copy of GSI's Warranty Claim with Tyco's response is attached hereto and incorporated herein by reference as Exhibit E.

**Answer:** Tyco Electronics admits the allegations that GSI submitted to Tyco Electronics a document dated January 27, 2007, entitled "GSI's Warranty Claim", identified as Exhibit E. Answering further, Tyco Electronics issued a response to GSI's warranty claim, and Tyco Electronics denies the remaining allegations in Paragraph 16 and further denies that these assertions and/or claims constitute a breach of warranty.

17. Since that time, Tyco personnel have made ten trips to GSI in an attempt to cause the SMT Machine to meet the rate and yield requirements of the Specification. Tyco has not, however, met its obligations under the Specification. As a result, GSI has been unable to accept or process orders for powered smart labels, while it has employed two full time operators dedicated to the SMT Machine along with GSI engineers and an outside specialized SMT consultant.

**Answer:** Tyco Electronics admits the allegations that Tyco Electronics personnel have made several trips to GSI in relation to the RFID Line, but Tyco Electronics denies that it breached any warranty that the RFID Line failed to meet the rate and yield requirements of GSI's Chip Mounter Spec. Tyco v8.1 Specification: Power ID Assembly Line. Tyco Electronics further denies that it has failed to meet any obligations under the GSI Chip Mounter Spec. Tyco v8.1 Specification: Power ID Assembly Line; and denies the remaining allegations in Paragraph 17.

18. In a final attempt to meet the rate and yield requirements of the Specification, Tyco representatives recently visited GSI to conduct a validation run on the SMT Machine to determine if it could run according to the requirements of the Specification. The SMT Machine failed to perform per the rate and yield requirements of the Specification.

**Answer:** Tyco Electronics admits the allegation that Tyco Electronics representatives have visited GSI, but denies the remaining allegations in Paragraph 18.

19. On November 9, 2007, GSI summarized the results in a validation run summary ("GSI's Validation Run Summary"). A true and accurate copy of the Validation Run Summary is attached hereto and incorporated herein by reference as Exhibit F.

**Answer:** Tyco Electronics admits the allegation that GSI issued a document to Tyco Electronics entitled "Tyco Validation Runs Results Summary," identified as Exhibit F. Answering further, Tyco Electronics states that the purported results in the Validation Run Results Summary are erroneous because they do not pertain to the GSI Chip Mounter Spec. Tyco v8.1 Specification: Power ID Assembly Line.

20. On November 24, 2007, Tyco responded to the GSI's Validation Run Summary by erroneously stating that each and every problem noted is "process and material related" and "a non-warranty issue" ("Tyco's Response to GSI's Validation Run Summary"). A true and correct copy of the Tyco's Response to GSI's Validation Run Summary is attached hereto and incorporated herein by reference as Exhibit G.

**Answer:** Tyco Electronics admits the allegation that on November 24, 2007, Tyco Electronics issued a response to GSI's Validation Run Results Summary, identified as Exhibit G, reciting Tyco Electronics' responses to GSI's claim for breach of warranty, but denies the allegations in Paragraph 20 that Tyco's responses were erroneous.

1803679-V3

21. GSI has suffered substantiated damage as a result of Tyco's breach of its obligations. GSI paid $1,180,089.76 to purchase the unusable SMT Machine, hired two operators for two years at a cost of approximately $228,000, paid $168,000 for engineering and consultant support, paid $314,000 in wasted leasehold improvements in connection with the unusable SMT Machine and even paid for Tyco employee travel costs when visiting the GSI plant. In addition, GSI has forgone business that it believes would have yielded in the range of $200,000 in profits to date. On top of all that, GSI has suffered the damage to its reputation resulting from the inability to meet customer demands caused by the SMT Machine's failure to meet the requirements of the Specification.

**Answer:** Tyco Electronics denies the allegation that Tyco Electronics breached any of its obligations to GSI and denies the allegation that GSI has suffered damages.

22. GSI has requested that Tyco accept return of the SMT Machine and provide GSI with reimbursement for the purchase price of the RFID Line and damages from Tyco's breach of its obligations. Tyco has refused to provide such reimbursement.

**Answer:** Tyco Electronics admits the allegations that GSI has requested Tyco Electronics to accept return of the RFID Line and to provide reimbursement for the purchase price and damages, and that Tyco Electronics has refused to provide such reimbursement, but denies that Tyco Electronics breached any contract, breached any warranty or breached any obligations to GSI.

## Count I – Breach of Contract

23. GSI repeats and realleges the allegations in paragraphs 1 through 22 as though fully set forth herein.

1803679-V3

**Answer:** Tyco Electronics repeats and realleges its answers to Paragraphs 1 through 22 as its answer herein.

24. Under the terms of the Quote, Specification, Purchase Order and Tyco's Purchase Order Response (collectively, the "Written Contract"), Tyco agreed to design and fabricate a SMT Machine meeting the requirements set forth in the Specification for use by GSI in performing the assembly and application of RFID products sold by GSI.

**Answer:** Tyco Electronics admits the allegation in Paragraph 24 that Tyco agreed to design and fabricate a RFID Line pursuant to GSI's Chip Mounter Spec. Tyco v8.1 Specification: Power ID Assembly Line. Answering further, Tyco Electronics denies the remaining allegations that the Quote, Specification, Purchase Order and Purchase Order Response collectively constitute the "written contract" between the parties.

25. GSI has performed all the conditions on its part under the terms of the Written Contract.

**Answer:** Tyco Electronics denies the allegations.

26. Tyco breached its obligations under the Written Contract, in that it failed to design and/or fabricate the SMT machine pursuant to the Specification and thus, the SMT Machine does not perform the necessary function of assembly and application of RFID products.

**Answer:** Tyco Electronics denies the allegations.

27. GSI provided Tyco with timely notice of the breach of contract alleged herein.

**Answer:** Tyco Electronics denies the allegation.

28. Despite numerous attempts, Tyco has been unable or refuses to bring the SMT Machine into compliance per the Specification, further constituting a breach of Tyco's obligations under the Written Contract.

1803679-V3

**Answer:** Tyco Electronics denies the allegations.

29. As a direct and proximate result of Tyco's breach, GSI has been unable to use the SMT Machine for its intended purpose and has been damaged in excess of $2,090,089.76, as delineated above.

**Answer:** Tyco Electronics denies the allegations.

### Count II – Breach of Express Warranty

30. GSI repeats and realleges the allegations stated in paragraphs 1 through 22, as though fully set forth herein.

**Answer:** Tyco Electronics repeats and realleges its answers to Paragraphs 1 through 22 as its answers to Paragraph 1 through 22 of this Count II.

31. At all relevant time, there was in full force and effect the Illinois Commercial Code, §810 ILCS 5/1-101 *et seq.* (the "Code").

**Answer:** Tyco Electronics admits the allegation.

32. Section 2-313 of the Code provides in relevant part:

> (1) Express warranties by the seller are created as follows:
>
> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

**Answer:** Tyco Electronics admits the allegation that Section 2-313 of the Code sets forth said provisions in relevant part.

1803679-V3

11

33. As part of the consideration for the purchase of the SMT Machine by the terms of the Written Contract, Tyco expressly agreed to guarantee performance of the SMT Machine within the Specification, specifically that Tyco would "guarantee compliance with all of the parameters specified [in the Specification]" (the "Written Warranty"). See Exhibit B at pp. 9-10 and Exhibit D at section 4.0.

**Answer:** Tyco Electronics admits that Exhibit B and Exhibit D contain the warranty language cited in Paragraph 33, but denies the allegations that Tyco Electronics breached said guarantee, Specification, warranty and/or performance of the RFID Line.

34. Furthermore, as part of the consideration for the purchase of the SMT Machine by the terms of the Written Contract, Tyco's described the "performance" of the SMT Machine. *See* Exhibit B at pp 6-9 and Exhibit D at section 3.0. This warranty by description along with the Written Warranty is hereafter referred to as the "Express Warranties".

**Answer:** Tyco Electronics denies the allegations. Answering further, Tyco admits that Exhibit B at pp 6-9 and Exhibit D at Section 3.0 recites "Performance Specifications" of the RFID Line, but denies the legal and/or factual conclusion that the Written Contract description of the performance of the RFID Line constitutes an express warranty or that Tyco Electronics breached said provisions.

35. Per the Written Contract, the warranty term was to begin after the SMT Machine was installed at GSI's facility and functional tests were conducted and the SMT Machine passed acceptance tests.

**Answer:** Tyco Electronics denies the allegations. Answering further, the warranty start date was January 20, 2006.

1803679-V3

12

36. Notwithstanding that the SMT Machine never passed acceptance tests, Tyco began performing under the Express Warranties on or about October 2006.

**Answer:** This allegation is vague and confusing. Answering further, GSI did in fact accept the RFID Line's performance and paid Tyco the final payment for the RFID Line; therefore Tyco Electronics denies the allegations.

37. GSI gave notice of its claims under the Express Warranties by submitting GSI's Warranty Claim to Tyco on or about January 27, 2007.

**Answer:** Tyco Electronics admits the allegation that GSI submitted to Tyco a document dated January 27, 2007, entitled "GSI's Warranty Claim".

38. GSI has performed all of its obligations pursuant to the terms of the Express Warranties.

**Answer:** Tyco Electronics denies the allegations.

39. Tyco breached the Express Warranties by designing and/or fabricating the SMT Machine in a condition such that it does not perform the necessary function of assembly and application of RFIT products at the yield or rate required by the Specification.

**Answer:** Tyco Electronics denies the allegations.

40. GSI provided to Tyco timely notice of the breach of the Express Warranties.

**Answer:** Tyco Electronics denies the allegations.

41. Tyco has further breached the Express Warranties by not bringing the SMT Machine into compliance with the Specification.

**Answer:** Tyco Electronics denies the allegation.

42. GSI has been damages by Tyco's breach of the Express Warranties and therefore is entitled to incidental and consequential damages under section 2-715 of the Code, totaling in excess of $2,090,089.76, as delineated above.

**Answer:** Tyco Electronics denies the allegations.

### Count III – Breach of Implied Warranty

43. GSI repeats and realleges the allegations in paragraphs 1 through 22, as though fully set forth therein.

**Answer:** Tyco Electronics repeats and realleges its answer to Paragraphs 1 through 22 as its answer to Paragraphs 1 through 22 of this Count III.

44. At all relevant time, there was in full force and effect the Illinois commercial Code, § 810 ILCS 5/1-101 *et seq.* (The "Code").

**Answer:** Tyco Electronics admits the allegations.

45. Section 2-314 of the Code provides, in relevant part:

(1) Unless excluded or modified (Section 2-1316). A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to the goods of that kind.

(2) For goods to be merchantable, they must, at a minimum:

> (a) pass without objection in the trade under the contract description; and
>
> (b) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved.

**Answer:** Tyco Electronics admits the allegation that Section 2-314 of the UCC sets forth said provisions in relevant part.

46. By failing to properly perform the assembly application of RFID products, the SMT Machine would not pass without objection in the trade under the contract description and does not run within the variations permitted by the Written Agreement.

**Answer:** Tyco Electronics denies the allegations.

47. Tyco breached the implied warranty of merchantability in that the SMT Machine was not in a merchantable condition when sold or at any time thereafter and was not fit for the ordinary purpose for which the SMT Machine is used as it does not properly perform the assembly application of RFID products as warranted and failed to function appropriately.

**Answer:** Tyco Electronics denies the allegations.

48. GSI has been damaged by Tyco's breach of its implied warranties and therefore is entitled to incidental and consequential damages under section 2-715 of the Code, totaling in excess of $2,090,089.76, as delineated above.

**Answer:** Tyco Electronics denies the allegations.

### FIRST AFFIRMATIVE DEFENSE

All claims alleged in the Complaint are time barred as GSI's January 27, 2007 "warranty claim" was not served on Tyco Electronics within twelve months after the warranty start date of January 20, 2006, as required by Sec. 4.1 of GSI's Specification.

### SECOND AFFIRMATIVE DEFENSE

All claims for breach of any express representation or warranty, express and/or implied warranty of merchantability or warranty of fitness for particular purpose, or statutory are barred and/or excluded by the terms of the Tyco Electronics Sales Order Acknowledgement and by

1803679-V3

Section 8 of Tyco Electronics Customer Order Terms and Conditions in effect at the time of the sale.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's sole and exclusive remedy for damages for any claim for breach of warranty, express and/or implied warranty of merchantability and/or warranty of fitness for particular purpose is limited to the repair or replacement of the defective article or a refund of the price of the defective article; and in no event shall Tyco Electronics be liable for incidental or consequential damages pursuant to the terms of the Tyco Electronics Sales Order Acknowledgement and by Section 8 of Tyco Electronics' Customer Order Terms and Conditions in effect at the time of the sale.

### FOURTH AFFIRMATIVE DEFENSE

Count III of the Complaint fails to state a claim upon which relief can be granted in that GSI employed Tyco Electronics to custom design, engineer, manufacture and fabricate the RFID Line specifically for GSI and specifically pursuant to GSI's customized design specification, entitled GSI's "Chip Mounter Spec. Tyco v8.1 Specification: Power ID Assembly Line." The implied warranty of merchantability does not apply to a unique, custom designed and engineered, and specially designed product. Consequently, the RFID Line was not a "merchantable good" as provided under the Illinois Commercial Code, § 810 ILCS 5/2-314, et. seq.

### FIFTH AFFIRMATIVE DEFENSE

The RFID Line is not a "merchantable good" under §810 ILCS 5/2 – 314, as it does not pass without objection in the trade under the contract description, as said machine was specially

1803679-V3

designed, engineered and manufactured solely for GSI's use pursuant to GSI's specific specifications, and the RFID Line had never previously been manufactured and/or sold.

### SIXTH AFFIRMATIVE DEFENSE

Count III of the Complaint fails to state a claim for breach of implied warranty upon which relief may be granted in that any implied warranty of merchantability is excluded and/or displaced by GSI's issuance of detailed and specific specifications entitled: Chip Mounter Spec. Tyco v8.1 Specification: Power ID Assembly Line, attached as Exhibit B to the Complaint, to Tyco Electronics as provided by § 810 ILCS 5/2-317(c).

### SEVENTH AFFIRMATIVE DEFENSE

Count III of the Complaint fails to state a claim for breach of implied warranty upon which relief may be granted because during the week of December 16, 2005, GSI examined, inspected and conducted tests on the operation and performance of the RFID Line at Tyco Electronics' facility in Berwyn, PA, and as a result of said inspection, GSI claimed and/or alleged that there were defects in the operation and performance of said machine. Notwithstanding GSI's knowledge of alleged defects in the operation and performance of said machine, GSI authorized the shipment of said RFID Line to its facility in Burr Ridge, Illinois in January 2006, and thereafter used said machine. Accordingly, pursuant to §810 ILCS 5/2-316(3)(b), no implied warranty of merchantability arose.

### EIGTH AFFIRMATIVE DEFENSE

Plaintiff GSI waived any provision in GSI Chip Mounter Spec. Tyco v8.1 Specification: Power ID Assembly Line that an acceptance test be signed off in writing regarding the performance of the RFID Line to meet the rate and yield requirements when it instructed Tyco

1803679-V3

Electronics to ship the RFID Line from Tyco Electronics' facility in Willow Grove, PA to GSI's facility in Burr Ridge, Illinois in January 2006, and by its subsequent approval and payments of the purchase price to Tyco Electronics in the amount of $539,314.68 in December 2005, and the final payment of the purchase price in the amount of $371,117.44 in March 2006.

### NINTH AFFIRMATIVE DEFENSE

Tyco Electronics custom designed, engineered and manufactured the RFID Line in accordance with GSI's Chip Mounter Spec. v8.1 Specification: Power ID Assembly Line, provided by GSI to Tyco. Any alleged failure in the performance of the RFID Line arises from and is the result of GSI's failure to use and/or produce Power ID products pursuant to GSI's Chip Mounter Spec. Tyco v8.1 Specification: Power ID Assembly Line.

### PRAYER FOR RELIEF

WHEREFORE, Defendant Tyco Electronics requests that this Court entered judgment against Plaintiff GSI and in favor of Defendant Tyco Electronics.

### JURY DEMAND

Tyco Electronics has requested and demanded in this Answer a trial by jury on all issues as a matter of right.

Dated: May 23, 2008

1803679-V3

Respectfully submitted,

/s/Michael P. Siavelis
One of the Attorneys for
Tyco Electronics Corporation

John W. Bell, Esq.
Michael P. Siavelis, Esq.
Richard R. Gordon, Esq.
JOHNSON & BELL, LTD.
33 West Monroe Street, Suite 2700
Chicago, IL 60603
Tele: (312) 372-0770
Fax:  (312) 372-9818

1803679-V3

## CERTIFICATE OF SERVICE

    The undersigned, an attorney, states that a true and complete copy of the foregoing TYCO ELECTRONICS' ANSWER TO PLAINTIFF'S COMPLAINT was served upon the following parties via operation of the Northern District of Illinois' Electronic Filing System on this 23RD day of May, 2008.

Kenneth S. GoodSmith, Esq.
D.R. Edwards, of counsel
Stephanie J. Synol, Esq.
150 S. Wacker Drive, Suite 3150
Chicago, IL 60606
312-322-1981
312-322-0056 - Fax

                                            /s/Michael P. Siavelis